FILED

2003 NOV -7  A 9: 38

US DISTRICT COURT
HARTFORD CT

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANNE E. HARHAY | : | NO.   300CV365   (AWT) |
| V. | : | |
| MAURICE W. BLANCHETTE | : | |
| WILLIAM R. HARFORD | : | |
| GARY J. BLANCHETTE | : | |
| CYNTHA A. HEIDARI | : | |
| DONALD WEEKES | : | |
| KENNETH J. BRENNAN | : | |
| SUSAN J. LUGINBUHL | : | |
| JOHN O'SHAUGHNESSY | : | |
| WENDY J. CIPARELLI | : | |
| RICHARD CURREY | : | |
| BOARD OF EDUCATION, TOWN OF ELLINGTON | : | |
| RICHARD E. PACKMAN | : | NOVEMBER 1, 2003 |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
SEPTEMBER 15, 2003 MOTION FOR SUMMARY JUDGMENT**

I.   **BACKGROUND:**

Under date of November 1, 2000 the defendants filed a Motion For

Summary Judgment, asserting a slew of defenses to the three counts of the

plaintiff's complaint. On August 28, 2001 the District Court ruled against the

defendants with regard to their claims of absolute legislative immunity [Count 3]

as well as qualified immunity [Count 3]; and as to their claims of the plaintiff's failure to exhaust administrative remedies, implicating the Court's jurisdiction [Counts 1, 2 and 3]. It did grant them relief on the Second Count, finding that the undisputed facts were insufficient to support a claim for intentional infliction of emotional distress. As noted by the defendants in their supporting brief dated November 1, 2000 [at page 6], their motion was "based primarily on the preliminary issues of exhaustion of remedies/subject matter jurisdiction and secondarily on the defense of federal qualified immunity."

Thereafter, the individual defendants appealed the District Court's rulings with respect to the issues of legislative and qualified immunity. In their appeal the defendants asserted that the District Court had improperly concluded that the individual defendants were not protected by legislative immunity and claimed that the District Court's "claimed functional analysis" of the issue was at odds with itself. The Court of Appeals rejected the defendants' assertions in these regards and affirmed the District Court's conclusion that legislative immunity was not a defense available to the appellants.

The individual defendants were successful, in part, however, the Court of Appeals holding that they were entitled to qualified immunity as the plaintiff's § 1983 claim [Count 3]. The plaintiff interposes no objection to the entry of a judgment for the individual defendants as to Count 3 in accordance with the remand instructions.

The defendant Board of Education filed no appeal from the District Court's August 28, 2001 ruling. The Court of Appeals noted that it expressed no view on the merits of the plaintiff's claim that the defendants breached the collective bargaining agreement [hereafter, CBA] or interfered with her contractual relations.

Accordingly, the remaining complaint includes Count 1 against both the Board of Education and the individual defendants and Count 3 against the Board of Education.

The defendants filed a Motion For Judgment As a Matter of Law/Supplemental Motion For Summary Judgment dated May 30, 2003, claiming that Count 3 should be dismissed as against the defendant Board of Education and that Count 1 should be dismissed for want of jurisdiction once the Court summarily rules in its favor on Count 3. That motion was denied on June 25, 2003.

The defendants filed a Motion For Judgment As Matter of Law/Supplemental Motion For Summary Judgment dated June 9, 2003 raising the same issues it had raised in their May 30, 2003 motion, being their third motion for summary judgment. That motion was withdrawn by the defendants in July, 2003.

Under date of September 15, 2003, the defendants filed their fourth Motion For Summary Judgment. They did so without seeking the permission of the District Court.

## II. LAW AND ARGUMENT:

The plaintiff submits that the defendants' pending claims should be rejected for the following reasons:

First, the defendants have failed to seek or obtain the permission of the District Court to file such a dispositive motion. Pursuant to Fed. R. Civ. P. 16(b), 26(f) and Local Rule 38, a conference was held on March 28, 2000. Thereafter, a Form 26(f) Report of Parties' Planning Meeting [dated May 1, 2000] was prepared, signed and filed with the District Court. Therein it was specifically agreed that dispositive motions "will be filed on or before November 1, 2000." The defendants filed a dispositive motion under date of November 1, 2000. The lengthy history of that motion has been recited hereinbefore. With regard to the September 15, 2003 motion the defendants have made no effort to either comply with time limiting terms of Form 26(f) Report or seek the permission of this Court to file an untimely dispositive motion. It was filed almost two years beyond the deadline date, and twenty-nine and one-half months after the conference preceding the preparation of the Form 26(f) Report. The defendants had more than adequate time to file whatever dispositive motions they thought were important. They have already taken an appeal on their November 1, 2000 dispositive motion. Their multiple filings, three of which have been incredibly untimely, have been unduly burdensome on both the plaintiff and the District Court. The undersigned has reason to suspect that the recent filings have been intended to place unnecessary litigation burdens upon the plaintiff, to somehow

4

wear her down as an individual litigant. The litigation conduct of the defendants have been abusive in these regards, and has included the filing of outright misrepresentations of fact [see Motion For Counsel fees and the plaintiff's response thereto]. The defendants should not be rewarded for their patent disregard of the procedural rules. The plaintiff submits that their September 15, 2003 claims should be summarily rejected; leaving open the issue of what sanctions should be applied to them and/or their counsel for their post-appeal litigation conduct.

Second, the Court of Appeals ruling was applicable to, and in the context of, the immunity issues raised by the individual defendants, and was not addressed to the substantive merits of the plaintiff's claims or against the defendant board of education.

Third, although the plaintiff did not appeal the Court of Appeals' decision, particularly because of the financial burdens it would have placed upon her and because it affected only the Count 3 claim against the individual defendants, there is substantial reason to question the correctness of its conclusion. The Court of Appeals concluded that the plaintiff took advantage of certain post-deprivation procedures available under the CBA ["by filing two grievances...and by pursuing arbitration."] The Court of Appeals then noted that there were precedents holding that such post-deprivation procedures are sufficient to satisfy due process, citing *Wojcik v. Mass State Lottery Comm'n,* 300 F.3d 92, 102 (1st Cir. 2002). However, an examination of the *Wojcik* case reveals that the aggrieved

employee not only had the right to an arbitration and further legal appeals from any adverse decision, but that he actually participated in a full and formal arbitration of his claims. And, additionally, after having the benefit of arbitration at which he was represented by personal counsel, the employee chose not to seek judicial review of an adverse decision to which he was entitled under Mass. Gen. Laws ch 150C, § 11 providing grounds for vacatur of an arbitrator's award). *Wocjik*, supra, pages 97-98. The plaintiff in present case had no such right to pursue arbitration on her own behalf and no arbitration was made available to her.

Fourth, the allegations and evidence available to this Court in connection with the pending motion is sufficient to raise triable issues of fact as to the defendant board's failure to afford the plaintiff due process. There exists credible evidence that the defendant board deliberately fabricated a procedural obstacle to the plaintiff' reappointment, by creating a no mid-school year resignation policy, neither authorized by the CBA or any statutory source, which it applied, apparently only to the retiring teacher in this case [and then applying its policy only in a fictitious and transparent manner, allowing the retiring teacher to vacate his position and teach elsewhere while remaining on the public payroll]; that it maliciously engaged in a process of deception with regard to the subject retirement, denying to the plaintiff that a vacancy existed while simultaneously signing off on the retiring teacher's state sanctioned retirement; that it failed to provide the plaintiff with any meaningful pre-deprivation or post-deprivation

hearing rights, the plaintiff having done all that she could to obtain such a post-deprivation hearing or review; and that it decided in advance upon a course of action without any consideration of the plaintiff's rights or any procedural protections therefor, other than a pre-determined intent to frustrate and deny them. In *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that a municipality can be liable under § 1983 where the municipality causes the constitutional violation itself. The search is for municipal policy or custom; here, among other things, the fabrication of a no mid-school year retirement policy created or invoked to destroy the plaintiff's reappointment rights. A single decision by municipal policymakers may constitute a practice or policy under certain circumstances. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). In the case of *McDonald v. City of West Branch, Michigan*, 104 Sup. Ct. 1799 (1984) the Supreme Court reversed the Court of Appeals and held that arbitration awards in proceedings brought pursuant to collective bargaining agreements would not have a preclusive effect in a Section 1983 action; federal rights not being adequately protected by arbitration proceedings.

An examination of the *Siegert v. Gilley* case [500 U.S. 226], cited by the defendants for the proposition that the Court of Appeals' decision on the issue of qualified immunity in this case compels the District Court to dismiss the plaintiff's remaining Count 3 claim against the defendant board, reveals that it has no bearing upon the liability of the said board. The *Seigert* case dealt with a defamation claim against a single individual [federal employee], alleging an

7

infringement of his "liberty" interests, wherein a split decision the Supreme Court held that injury to reputation by itself is not a protected "liberty" interest in the context of applying a qualified immunity defense. The individual defendant had filed both a motion to dismiss and an alternative motion for summary judgment. The plaintiff had made no allegation of malice or bad faith. The Supreme Court majority held that the facts alleged by the plaintiff were not sufficient, under the court's prior reasoning in a defamation case, to state a claim for denial of a constitutional right: "The alleged defamation was not uttered incident to the termination of Siegert's employment by the hospital, since he voluntarily resigned from his position at the hospital, and the letter was written several weeks later." Id., 234.

Fifth, even were the Court to grant the defendant Board of Education's Motion For Summary Judgment as to Count 3, it should not dismiss the plaintiff's remaining claims against the defendants [Count 1], for the following reasons:

(a) the Court may retain supplemental jurisdiction over the non-federal claims and should, the parties having already engaged in substantial litigation in the federal court and the court being familiar with the parties respective claims [See *Mizuna, Ltd. v. Croissland Fed. Savs. Bank.*, C.A. 2d, 1996, 90 F.3d 650];

(b) the defendants should not be permitted to obtain some legal advantage by reason of their own actions in removing the case from

state court, which they knew contained non-federal as well as federal claims at the time of removal;

(c) the defendants are clearly engaging in forum shopping, or worse, seeking the Court's approval of their game of legal hop-scotch;

(d) the dismissal of the case may well prejudice the plaintiff with regard to her remaining claims, if she is then required to re-file a complaint in state court at additional cost and expense and be confronted with new defenses arising simply because of the federal court's dismissal;

(e) federal jurisdiction remains, in any event, because of the diverse citizenship of the parties, the plaintiff being a Massachusetts citizen and the defendants being Connecticut citizens and a Connecticut entity.

Sixth, the defendants' mischaracterize the nature and extent of the plaintiff's claims. They refer to the plaintiff's property interest as "her claimed right of recall." The Court of Appeals has determined that her right is a property interest. Her claims do not simply state a breach of contract claim. They include claims arising out of fraudulent and intentional misconduct, interfering with her property rights and expectations. Under Connecticut law, elements of a claim for tortious interference of business expectancy include the existence of the business relationship, the alleged tort-feasor's knowledge of that relationship, intentional

9

interference with the relationship and consequential loss. *Chem-Tek, Inc. v. General Motors Corp.*, 816 F. Supp. 123 (1993).

The defendants' claims regarding exhaustion of remedies have already been litigated and lost by them. They are now back to take another bite at the apple. The plaintiff cannot be required to sue her union as a condition of maintaining the present case. This is not a simple enforcement of a collective bargaining agreement action or the processing of a routine grievance. In *Shaw v. Southern Aroostook Community School*, 683 Atl. 2d 502 (1993), the Maine Supreme Judicial Court held that it was error by a trial court to summarily reject the plaintiff teacher's claims alleging interference with his contractual relationship, wherein the school district, a principal and superintendent were defendants. The court observed that interference with a valid contract or prospective economic advantage through fraud or intimidation was actionable when damages were proximately caused by the interference. See, also, *Cahill v. Board of Education*, 187 Conn. 94, 444 A.2d 907(1982), wherein the Connecticut Supreme Court rejected a similar defense claim.

In lieu of burdening the District Court with redundant documentation of the plaintiff's claims, which are of record and already on file, the plaintiff incorporates by reference her affidavit of record [filed in response to the first Motion for Summary Judgment dated November 1, 2000], together with her Local Rule 56 Statements [with attachments] filed in June 2003 and July 2003 in response to the defendants' second and third Motions of Summary Judgment.

10

In the event the Court decides to decline jurisdiction, the plaintiff requests that the case be remanded to the Superior Court of Connecticut in lieu of any dismissal.

Dated at Hartford, Connecticut this 1st day of November, 2003.

*[signature]*

Noah H. Starkey, Esq.
214 Main Street, Suite 501
Hartford, CT 06106
Telephone: 860-541-6999
Fax: 860-241-7744
Federal bar number: ct07606

## CERTIFICATION

The undersigned, Noah H. Starkey, Esq., hereby certifies that a copy of the foregoing Memorandum was sent by first class United States mail, postage prepaid, on this 5th day of November, 2003 to the following counsel of record:

Michael J. Rose, Esq.
Howd & Ludorf
65 Wethersfield Avenue
Hartford, CT 06114

_____
Noah H. Starkey, Esq.
241 Main Street, Suite 501
Hartford, CT 06106
Telephone: 860-541-6999
Fax: 860-241-7744